## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-03251-RMR-STV

ALAN LAMOTHE,

      Plaintiff,

v.

DECENTRAL LIFE, INC f/k/a SOCIAL LIFE NETWORK, INC.;
MJLINK.COM, INC.;
HUNTPOST, INC.;
LIKERE.COM, INC.;
KEN TAPP; and
GREGORY TODD MARKEY,

      Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Scott T. Varholak

      This matter is before the Court on Defendants' Joint Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion") [#47], which has been referred to this Court [#49]. The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion.  For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED IN PART** and **DENIED IN PART**.

I.    **BACKGROUND**[1]

The Complaint asserts that Defendants Ken Tapp and Todd Markey made fraudulent statements concerning the business operations and metrics of Defendants Decentral Life ("Decentral") (a company that provides social networking and e-commerce platforms to startup founders) and its Licensees: MjLink.com, Inc. ("MjLink") (a multinational cannabis technology and media sales organization); HuntPost.com, Inc. ("HuntPost") (a social network and e-commerce platform for the hunting, fishing, and camping community); and LikeRe.com, Inc. ("LikeRe") (a real-estate social networking platform for industry professionals).  [#36 at ¶¶ 10-16, 19]   In reliance on these fraudulent statements, Plaintiff invested a total of $1.7 million in Decentral and MjLink over two years. [*Id*. at ¶ 1]

On February 3, 2021, Defendants hosted a shareholder podcast to update shareholders on usership growth, specifically Monthly Active User ("MAU") metrics. [*Id*. at ¶¶ 2, 36]. Defendants shared that HuntPost's usership grew to 1,042,755 MAUs in December of 2020 (111% increase from 2019); LikeRe's usership grew to 924,588 MAUs in December 2020 (105% increase from 2019); and MjLink's usership grew to 5,681,966 MAUs in December 2020 (31% increase from 2019).  [*Id*. at ¶ 38, 40-41]  In reliance on the growth discussed in the February 3 podcast, Plaintiff purchased shares of Decentral common stock. [*Id*. at ¶ 34, 44-45]  The Complaint states that Plaintiff purchased 20 million shares of Decentral on February 5, 2021, and 10 million shares on February 8,

---

[1] The facts are drawn from the allegations in Plaintiff's Amended Complaint (the "Complaint") [#36], which must be taken as true when considering the Motion.  *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

2021, in direct reliance on the Defendants' misrepresented MAU counts stated during the February 3, 2021 podcast. [*Id*. at ¶¶ 44-45]  Relying on Defendants' February 3 podcast and other statements made through podcasts and press releases, Plaintiff continued purchasing Decentral stock through May 2022 and added stock purchases in MjLink as well.  [*Id*. at ¶¶ 29-30, 35, 38-39, 44-45, 48, 57, 60, 72-75, 78, 86-87, 91] Plaintiff claims: (1) he purchased 59,949,477 shares of common equity in Decentral in the month of February 2021 for a total of $1,416,029.83, (2) from March 2021 to September 2022, Plaintiff purchased 37,719,612 shares of common stock in Decentral for $322,736.73, and (3) his total purchases in Decentral involved at least 95 transactions of 97,669,189 shares of common stock for $1,748,766.56. [*Id*. at ¶ 48]  Plaintiff also claims to have purchased shares of MjLink directly, totaling $5,000.  [*Id*. at ¶ 57-60]

According to the Complaint, through their statements, Defendants falsely represented that Decentral's Licensees had millions of MAUs and were thriving social networking platforms, which indicated healthy long-term potential for monetization and influenced Plaintiff's decision to invest.  [*Id*. at ¶3]  However, Plaintiff asserts, contrary to these public statements, the Defendants' MAU counts were significantly overstated, with actual user numbers reportedly being in the low tens to single thousands.  [*Id*. at ¶5] Plaintiff estimates that at the time of the February 3, 2021 podcast, HuntPost had at most

7,250 MAUs[2], LikeRe had at most 15,000 MAUs[3], and MjLink had at most 25,000 MAUs[4]. [*Id.* at ¶ 65]  At no time did Defendants attempt to correct the inaccuracy of the reported numbers.  [*Id.* at ¶ 6]

Plaintiff initiated this action on December 8, 2023.  [#1]  The operative Complaint brings six claims: 1) fraudulent misrepresentation, 2) fraudulent concealment, 3) violations of the Colorado Securities Act ("CSA"). (4) negligent misrepresentation, 5) civil conspiracy, and 6) violations of the Colorado Consumer Protection Act ("CCPA").  [#36] Defendant filed the instant Motion on April 5, 2024.  [##47-48]  Plaintiff has responded [#56] and Defendant filed a reply [#58].

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on

---

[2] Plaintiff bases this estimate on: 1) The public user directory, which identified 7,250 users; 2) AppStore Downloads of the app totaling between 5,000-10,000 downloads; and 3) Monthly traffic of 3,667 users.  [*Id.* at ¶¶ 69-70, 75-76]

[3] Plaintiff bases this estimate on: 1) The public user directory, which identified 1,600 users; 2) AppStore downloads of the app totaling between 1,000-5,000 downloads; 3) Monthly traffic of 1,398 users; and 4) information from another investor who publicly estimated 15,000 MAUs. [*Id.* at 71, 75-76]

[4] Plaintiff bases this estimate on 1) AppStore downloads of the app totaling between 1-5000 downloads; 2) Monthly traffic of 661 users; and 3) the users and monthly traffic of Weedlife.com, which is part of the MjLink network.  [*Id.* at ¶¶ 11, 75-76]

mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**B.     Federal Rule of Civil Procedure 9(b)**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The purpose of the requirement "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based," to "safeguard[] defendant's reputation and goodwill from improvident charges of wrongdoing," and "to inhibit the institution of strike suits." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992) (quotation omitted). To meet the particularity requirements of Rule 9(b), a plaintiff must "set forth the time, place and contents of the false representation[s], the identity of the party making the false

statements and the consequences thereof." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000); *see also United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726-27 (10th Cir. 2006) ("the who, what, when, where and how of the alleged fraud" must be set forth) (quotation omitted), *abrogated on other grounds by Cochise Consulting Inc. v. U.S. ex rel. Hunt*, 587 U.S. 262 (2019). "[I]n determining whether a plaintiff has satisfied Rule 9(b), courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control." *George*, 833 F.3d at 1255.  "Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992).

## III.    ANALYSIS

Defendants have moved to dismiss Plaintiff's Complaint on multiple grounds, including failure to meet the heightened pleading requirements for fraud under Rule 9(b) of the Federal Rules of Civil Procedure; failure to state a claim under the CCPA and the CSA; and failure to adequately plead claims for negligent misrepresentation, civil conspiracy, fraudulent misrepresentation, and fraudulent concealment.  [#48]  Based on these arguments, Defendants seek dismissal of all claims.  [*Id*. at 12[5]]  The Court addresses each of Defendants' arguments individually.

---

[5] For consistency and clarity, the Court refers to the actual page number of the .pdf document uploaded to the Electronic Court Filing system, rather than to the numbering printed on each page.

## A.    Pleading of Plaintiff's Fraud-Based Claims

Defendants contend that each of Plaintiff's claims lack the requisite specificity under Rule 9(b) of the Federal Rules of Civil Procedure, which requires that allegations of fraud be stated with particularity.  [#48 at 14-15]  In particular, Defendants argue that: 1) the Complaint is an impermissible group pleading; 2) Plaintiff's allegations of unspecified purchases of Decentral securities must be disregarded; 3) Plaintiff could only have relied on statements predating his specified purchases of Decentral and MjLink securities; 4) Defendants' alleged representations that constitute puffery, opinion, or expressions concerning the future cannot serve as a basis for a fraud claim; and 5) Plaintiff fails to plead reliance.  [*Id.* at 15-20]  The Court disagrees that Plaintiff has failed to satisfy Rule 9.

The Tenth Circuit explains that "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim."  *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (quotation omitted).  This Court finds Plaintiff's Complaint does adequately set forth the time and place of Defendants' alleged fraud to give notice to Defendants.  Plaintiff has alleged sufficient details regarding the misrepresentations made by Defendants that meet the specificity requirements of Rule 9(b), which requires allegations to detail the "who, what, when, where, and how" of the alleged fraudulent conduct.  *See Sikkenga*, 472 F.3d at 726-27.  First, the Complaint provides particular details about the statements regarding the MAU counts for the Licensees, including who made them (Defendants Tapp and Markey), the dates of the shareholder podcasts (February 3, 2021), and specific content of the alleged

7

misrepresentations, such as inflated MAU numbers.  [#36 at ¶¶ 36-41]  The Complaint

further alleges Plaintiff's reliance on the alleged misrepresentations and how Defendants

used these alleged misrepresentations to induce further investment.  [*Id*. at 44-48, 78]

This level of detail satisfies the requirements of Rule 9(b), providing Defendants with fair

notice of the claims against them.  Nonetheless, the Court addresses each of Defendants'

specific arguments below.

### 1.   Group Pleadings

Defendants argue that the Complaint improperly relies on group pleading in its

claims against Defendants LikeRE and HuntPost.  [#48 at 15-16]  Defendants contend

that the Complaint fails to differentiate between the actions of the individual defendants

and the corporate entities and does not specify the particular roles that LikeRE and

HuntPost played in the alleged fraudulent misrepresentations.  [*Id*. at 16]  They assert

that Plaintiff's reliance on generalized allegations that "Defendants" made certain

statements fails to meet the particularity standard required under Rule 9(b) and that

Plaintiff cannot merely attribute the actions of individuals (like Tapp and Markey) to entire

entities without more detailed allegations tying the fraudulent conduct to each defendant

individually.  [*Id*.]  Plaintiff, on the other hand, argues that the interconnected nature of the

companies and the individuals involved justifies the approach taken in the Complaint.

[#56 at 5-7[6]]  Specifically, Plaintiff points to the fact that either Tapp or Markey or both

were high-level officers and directors of all the companies, meaning that when they made

statements in shareholder podcasts, they were acting on behalf of all entities, not just

---

[6] For consistency and clarity, the Court refers to the actual page number of the .pdf
document uploaded to the Electronic Court Filing system, rather than to the numbering
printed on each page.

Decentral.  [*Id*. at 5-6]  As such, Plaintiff argues that it is reasonable to attribute the fraudulent statements to all involved entities because they were controlled and represented by the same individuals. [*Id*. at 6]  The Court agrees with Plaintiff.

Under Rule 9(b), plaintiffs must state with particularity the circumstances constituting fraud or mistake.  While Rule 9(b) generally prohibits group pleading in fraud claims, exceptions exist when corporate affiliates or insiders share overlapping roles and conduct business in a highly integrated manner.  The group pleading doctrine allows plaintiffs in securities fraud cases to attribute corporate statements to "one or more individual defendants based solely on their corporate titles."  *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 363 (5th Cir. 2004).  Under this doctrine, the plaintiff need not allege any facts demonstrating an individual defendant's participation in the particular communication containing the misstatement or omission where the defendants are "insiders or affiliates" of the company.  *Id*.; *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, 2021 WL 4994435, at *10 (Bankr. S.D.N.Y. Oct. 27, 2021*) (noting that "'no specific connection' between the fraudulent behavior and particular defendants is necessary 'where . . . defendants are insiders or affiliates'") (quoting *DiVittorio v. Equidyne Extractive Industries*, Inc., 822 F.2d 1242, 1247 (2d. Cir. 1987)).  Under the group-pleading doctrine as embodied by courts within the Tenth Circuit, "[i]dentifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers."  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997).

According to the Complaint, Defendants Tapp and Markey made misrepresentations about the MAU counts of the Licensees (LikeRE, HuntPost, and MjLink)[7] in shareholder podcasts and other communications, which put those entities in the center of this case.  [#36 at ¶¶ 36-40, 56-57, 70, 72]  Plaintiff has also alleged that the health and success of Decentral was intricately tied to the performance of the Licensees, and thus statements made about one entity's user metrics would reasonably affect investors' perception of the other entities.  [*Id*. at ¶ 23]  Because Defendants Tapp and Markey were officers and directors of all the relevant entities[8]—Decentral, HuntPost, MjLink, and LikeRE—their statements on behalf of Decentral reasonably extend to LikeRE and HuntPost.  Tapp and Markey made these statements without making clear distinctions about which role they were speaking from, which suggests that the statements could be attributed to all the entities they represented at the time.

Given these allegations, this Court finds that Plaintiff's claims against the defendants are sufficiently intertwined and that the joint leadership of Defendants Tapp and Markey across all Defendant-entities makes it plausible that the misrepresentations were made on behalf of all of the companies, not just Decentral.  As such, this Court rejects Defendants' argument that group pleading in this case is impermissible and thus does not believe that LikeRe or HuntPost should be dismissed on this basis.

---

[7] According to the Complaint, in the February 3, 2021 podcast, Tapp claimed that HuntPost had 1,042,755 MAUs, LikeRE had 924,588 MAUs, and MjLink had 5,681,966 MAUs.  [*Id*. at ¶ 63]  Plaintiff estimates, upon information and belief, that at this time, HuntPost had 7,250 MAUs; LikeRe had 15,000 MAUs; and MjLink had 25,000 MAUs.  [*Id*. at ¶ 65]

[8] According to the Complaint, Defendant Ken Tapp is an executive or co-founder at Defendants Decentral, MjLink, LikeRe, and HuntPost. [*Id*. at ¶¶12, 14-15]  Defendant Todd Markey is an executive at Defendants Decentral and MjLink.  [*Id*. at ¶16]

### 2.    Specific Purchases of Securities

Next, Defendants argue that Plaintiff has failed to provide sufficient specificity regarding the dates, amounts, and circumstances of stock purchases in Decentral, part of Plaintiff's reliance on the alleged fraudulent misrepresentations.   [#48 at 16-17] Defendants contend that Plaintiff has only vaguely referenced purchases over a broad period—spanning almost two years—without listing specific dates or amounts except in two instances in February 2021, which is not sufficient for the pleading standards of Rule 9(b).  [*Id*.]  Plaintiff argues that the Complaint provides sufficient detail to give Defendants fair notice of the fraud claims—Plaintiff provided specific dates for the February 5, 2021 and February 8, 2021 transactions,[9] and for subsequent purchases, he provided an overall timeframe (March 2021 to September 2022), along with total amounts of shares purchased.[10]  [#56 at 7-8 (citing #36 at ¶¶ 44-48)]  Plaintiff further argues that listing every single transaction is not required, especially when timing and general details are provided, allowing for discovery to further clarify the specifics.  [#56 at 8-9]  Plaintiff relies on the principle that Rule 9(b) does not mandate exhaustive transactional details at the pleading

---

[9] The Complaint states that Plaintiff purchased 20,000,000 shares of Decentral on February 5, 2021, and 10,000,000 shares on February 8, 2021, in direct reliance on the Defendants' misrepresented MAU counts stated during the February 3, 2021 podcast. [#36 at ¶¶ 44-45]
[10] Relying on Defendants' February 3 podcast and other statements made through podcasts and press releases, Plaintiff continued purchasing Decentral stock through May 2022 and added stock purchases in MjLink, as well.  [#36 at ¶¶ 29-30, 35, 38-39, 44-45, 48, 6072-75, 78, 86-87, 91] Plaintiff claims he purchased 59,949,477 shares of common equity in Decentral in the month of February 2021, for a total February amount of $1,416,029.83, and that from March 2021 to September 2022, Plaintiff purchased 37,719,612 shares of common stock in Decentral for $322,736.73—totaling at least 95 transactions of 97,669,189 shares of common stock in Decentral for $1,748,766.56. [*Id*. at ¶ 48]  Plaintiff also claims to have purchased shares of MjLink directly, totaling $5,000. [*Id*. at ¶ 57-60]

stage, but enough to make the fraud claim plausible.  [*Id*. at 8-10]  The Court agrees with Plaintiff.

Courts typically require plaintiffs in securities fraud cases to allege with specificity the dates and amounts of their securities purchases to demonstrate how they relied on fraudulent statements.  *See*, *e.g.*, *Gross v. Diversified Mortgage Investors*, 431 F. Supp. 1080, 1088 (S.D.N.Y. 1977) (noting that claims involving stock purchases should provide clear details of the transactions).  However, courts have also recognized that exact transactional details need not be exhaustively pled at the motion to dismiss stage as long as the overall allegations are plausible and give the defendant sufficient information to understand the claim.  *See*, *e.g.*, *George*, 833 F.3d at 1256 (allowing more general fraud allegations to survive a motion to dismiss when the overall claim was adequately detailed to apprise defendants of their role in the fraud); *Imming v. De La Vega*, No. 23-378 GJF/DLM, 2023 WL 8650372, at *10 (D.N.M. Dec. 14, 2023) ("Absent any statutory authority or case law suggesting otherwise, the Court concludes that the failure to allege the specific dates and manner of transfer of any assets, or even *one* asset, is not fatal to Plaintiff's claims at the motion to dismiss stage." (citing *Desmond v. Taxi Affiliation Servs.*, LLC, 344 F. Supp. 3d 915, 926 n.3 (N.D. Ill. 2018) (reasoning that, even under Fed. R. Civ. P. 9(b)"s heightened pleadings standard, a plaintiff need not plead specific transaction dates 'when the alleged conduct spans a significant time period or involves numerous occurrences"))). Thus, while Rule 9(b) calls for specificity, courts have allowed some flexibility at the pleading stage, particularly when a plaintiff has made some specific allegations, as here with two detailed stock purchases, but has also aggregated other transactions.

Plaintiff has clearly delineated his investments into specific periods, detailing initial investments in early February 2021, shortly after the February 3 podcast, and additional investments in subsequent months.  [#36 at ¶¶ 44-48]  In light of the case law, Plaintiff's failure to list every single purchase does not necessarily doom the claim at the motion to dismiss stage.  The Complaint provides enough detail (specific dates for two purchases and a general timeframe for others) to give Defendants notice of the alleged fraud.  Further specificity can be developed during discovery, especially as courts are inclined to allow fraud claims to proceed when the overall pattern is clear, even if some transactional specifics are missing at the pleading stage.  The specificity concerning the initial transactions thus meets the pleading requirements under Rule 9(b) and provide the "who, what, when, where, and how" of the alleged fraud, giving Defendants fair notice of the claims against them.

### 3.    Plaintiff's Allegations of Reliance

Next, Defendants argue that Plaintiff's allegations of reliance are insufficient because Plaintiff does not specifically allege that he listened to or viewed the podcasts in which the alleged misrepresentations were made, but rather states conclusory assertions such as Plaintiff relied on Defendants' misrepresentations, which are inadequate under Rule 9(b).  [#48 at 19-20]  According to Defendants, the absence of a clear connection between Plaintiff's decision to purchase securities and his actual exposure to the misrepresentations fails to meet the pleading standard for fraud.  [*Id.*]  Defendants cite cases where similarly vague allegations of reliance were rejected, emphasizing that Plaintiff's claims are devoid of any factual specificity linking the misrepresentations to his decision to invest in Decentral and MjLink.  [*Id*. at 20]  Plaintiff responds that the Complaint

sufficiently pleads reliance, stating that the misrepresentations made during the February 3, 2021 shareholder podcast and subsequent podcasts and communications were the direct cause of his decision to invest in Decentral and MjLink, relying on the user metrics presented by Defendants.  [#56 at 8; #36 at ¶¶ 44-48]  Plaintiff maintains that while the Complaint may not use the explicit language "Plaintiff listened to the podcast," it clearly alleges that Plaintiff acted in reliance on the false information disseminated during those podcasts.  [#56 at 7]  The Court agrees with Plaintiff.

Defendants are correct in pointing out that mere conclusory statements like "Plaintiff relied on the misrepresentations" are often insufficient to survive a motion to dismiss claim.  *See, e.g., In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 321-22 (8th Cir. 1997) (dismissing a securities fraud claim despite allegation that plaintiffs acted "in reliance upon the defendants' misrepresentations," because plaintiffs "did not allege specific facts showing that they relied on the Prospectus"); *Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett*, No. 05 Civ. 8988(GEL), 2007 WL 1732427, at *10 (S.D.N.Y. June 14, 2007) (dismissing the complaint for failing to allege reliance with specificity, holding that generalized claims of reliance without particularized allegations connecting the plaintiff's decisions to the alleged misrepresentation were inadequate under Rule 9(b)); *Smith v. Mitlof*, 198 F. Supp. 2d 492, 504-05 (S.D.N.Y. 2002) (rejecting fraud claims where the plaintiffs failed to allege specific facts showing how or when they relied on the defendant's misrepresentation).  Rather, the plaintiff must generally plead facts showing that they acted in reliance on the alleged misrepresentation. *See, e.g., Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1479 (D. Colo. 1991). However, courts also recognize that allegations that as a whole suggest a plausible connection between the misrepresentation and the

plaintiff's actions can be sufficient in determining reliance.  *See*, *e.g., In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 363 (S.D.N.Y. 2011) (noting in Section 10(b) case that "[t]ransaction causation is akin to reliance; it requires only an allegation that but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction"); *Prime Eagle Grp. Ltd. v. Steel Dynamics, Inc.*, No. 1:08 CV 35, 2009 WL 449173, at *5 (looking to "the complaint as a whole" in determining whether plaintiff had plausibly pled reliance in its fraud and constructive fraud claims). Whether such reliance actually occurred is generally a question of fact that cannot be determined at this early stage. *See, e.g., Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 793 F.Supp.2d 1138, 1145 (C.D. Cal. 2011).

This Court finds that Plaintiff has adequately pled that he acted in reliance on the podcasts' contents, which is sufficient to meet the pleading standards.  Here, Plaintiff has alleged that the February 3, 2021 podcast and subsequent misrepresentations caused him to invest in Decentral, detailing the dates of his initial investments shortly after the podcast (February 5 and 8) and asserting that he relied on Defendants' statements regarding user metrics.  [#36 at ¶¶ 44-48]  Plaintiff's failure to explicitly state that he "listened to" or "viewed" the podcasts may leave room for ambiguity, but at this stage, the court "must construe the complaint in the light most favorable to the plaintiff" and resolve any ambiguities "in favor of plaintiff, giving him the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in his complaint." *Daktronics, Inc. v. Skyline Prods.*, No. 15-cv-02699-WJM-KLM, 2016 WL 9735758, at *1 (D. Colo. Nov. 28, 2016) (quotation omitted). The timing of the investments—just days after the podcast— plausibly suggests that Plaintiff had access to and relied on Defendants' representations.

Given that Plaintiff alleges specific investment decisions closely following the misstatements and a clear assertion that he relied on the information provided in the podcasts, Plaintiff has provided enough at this stage to meet the requirements of Rule 9(b).

### 4. Plaintiff's Reliance on Post-Purchase Statements

Next, Defendants argue that Plaintiff cannot base his fraud claims on any statements made *after* he purchased stock in Decentral and MjLink. [#48 at 17-19] Defendants assert that many of the allegedly fraudulent statements referenced in the Complaint were made after February 2021 and therefore cannot form the basis for Plaintiff's claims. [*Id*. at 17-18] Plaintiff argues that the allegedly false and misleading statements made after February 2021 are relevant and actionable because they influenced his decision to keep his stock and continue purchasing stock. [#56 at 10] The Court agrees with Plaintiff.

Under Colorado law, a plaintiff in a fraud action must establish that they relied on the defendant's fraudulent misrepresentations when claiming damages stemming from those statements. *Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544, 558 (Colo. 1988) ("To claim damages from allegedly fraudulent statements, the plaintiff must establish detrimental reliance on the statements." (citation omitted)). In other words, for claims of fraudulent inducement, the statements that a plaintiff relies upon typically must precede the investment or transaction. In this case, Plaintiff alleges that Defendants' repeated claims of MAU growth, including in podcasts and other communications made after February 2021, reinforced his belief that the Licensees were thriving and that his investments would generate a substantial return, which induced him to continue

purchasing stock.   [#36 at ¶¶ 4, 29, 32, 47-48, 57, 60-61, 78]   This ongoing reliance is sufficient to support a claim for fraud, even if some statements were made after Plaintiff's initial stock purchase.

Defendants also argue that any claim based on Plaintiff's decision to hold stock in reliance on post-purchase statements should be dismissed as an impermissible "holder claim."   [#48 at 18]   Colorado courts have recognized holder claims—claims based on a plaintiff's decision to retain an investment rather than to buy or sell based on fraudulent misrepresentations—but subjected them to specific pleading requirements.   *See Robinson v. Oppenheimerfunds, Inc.*, No. 12-cv-1528-JLK, 2013 WL 754417, at *6 (D. Colo. Feb. 27, 2013).   "Specifically, a plaintiff must demonstrate she had concrete plans to sell her securities but refrained from doing so in reliance on a misrepresentation made directly to her."   *Id*.   The caselaw suggests this is applied to situations where the plaintiff alleges only that they refrained from selling their stock, without any allegation of additional purchases or transactions based on the fraudulent statements.   *Id.*   In contrast, Plaintiff here alleges that he not only held onto his initial stock but also made additional purchases in reliance on Defendants' ongoing misrepresentations.   [#36 at ¶¶ 48-50]   Therefore, Plaintiff's claims involve additional stock purchases, not solely the decision to hold stock, which distinguishes this case from impermissible "holder claims."   And as explained earlier, the Plaintiff has adequately alleged reliance upon statements made by Defendants.   Accordingly, Plaintiff has provided enough at this stage to meet the requirements of Rule 9(b) as it relates to this claim.

**5.    Defendants' Representations as Puffery, Opinion, Or Expressions Concerning the Future**

Defendants argue that their statements regarding the future success of the companies, including claims about potential public listings and future profitability, constitute non-actionable puffery, opinion, or expressions about future events and cannot form the basis for a fraud claim under Colorado law.[11]   [#48 at 19]   According to Plaintiff, Defendants provided concrete numerical data—such as MAU counts in the millions—and linked these figures directly to the companies' potential success.   [#36 at ¶¶ 36-41, 56]   Plaintiff contends that Defendants' misrepresentation of these metrics created a false impression of the companies' value and growth prospects, which Plaintiff reasonably relied upon when making investment decisions.   [*Id*. at ¶¶ 55, 78]   The Court agrees with Plaintiff that, if these allegations are true, Defendants' representations went beyond puffery, opinion, or expressions concerning the future.

The Tenth Circuit has distinguished "between statements that are material and those that are 'mere [puffery] . . . [or] not capable of objective verification*." In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1339 (10th Cir. 2012) (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997)). "Vague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions." *Id*. (quoting *Grossman*, 120 F.3d at 1119); *see also Myers v. Alliance for Affordable Servs.*, 371 F. App'x 950, 957 (10th Cir. 2010) ("[A] mere expression of an

---

[11] Defendants' entire argument on this point consists of a single sentence explaining the concept of puffery and then the statement: "Accordingly, statements made by either Tapp or Markey concerning projections of future profitability, including the existence of a public market or the listing on a public exchange cannot be the basis of Plaintiff's fraud claims." [#48 at 19 (citation omitted)]

opinion in the nature of a prophecy as to the happening or non-happening of a future event is not actionable.") (quotation omitted).   The Tenth Circuit further relies upon the Restatement (Second) of Torts to help guide this distinction:

> A representation of fact is a positive assertion [that something] is true. It implies that the maker has definite knowledge or information which justifies the positive assertion. A representation of opinion, on the other hand, is only one of the maker's belief. . . .   It implies that he does not have definite knowledge, that he is not sufficiently certain of what he says to make the positive statement.

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109, 1120 (10th Cir. 2014) (quoting Restatement (Second) of Torts § 538A cmt b).

In determining whether a statement is puffery, the context also matters. *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009).   The relative expertise of the speaker and the listener, as well as the size of the audience can be critical factors. *Id*. at 1106-07,  For example, the slogan "*You're in good hands with Allstate*" was held to be puffery because it was considered mass advertising in vague terms. *Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991).   Similarly, in *Alpine Bank*, the 10th Circuit found that a generalized statement that the Bank will "take care of everything else" could not be reasonably relied upon as a specific assurance.  555 F.3d 1107.

In this case, Defendants' statements about the companies' MAUs—presented as current, measurable data—and the future impact thereof, are not the kind of vague, subjective statements typically considered puffery.[12]  For example, Defendants allegedly stated that the purpose of the February 3, 2021 podcast was to "discuss[] 2020 user

---

[12] For example, it is not mere puffery for a company to state that it has 10 million dollars in a Wells Fargo bank account and that it intends on Wednesday to transfer that money to a Bank of America investment account.

growth across all seven social networks that the company services, as well as our expectations for 2021 growth for the MJLink, HuntPost, and LikeRE" and "update our shareholders on the 2020 usership growth for our three licensees that we have planned for REG A Tier 2 IPO offerings this year, which is MJLink, LikeRE, and HuntPost." [#36 at ¶¶ 36-37].   Defendants then provided specific MAU numbers, numbers which were allegedly grossly false.  [*Id.* at ¶¶ 38, 40-41, 65]  Defendants allegedly further discussed documented growth, specific plans to take Licensees public, and specific valuations for those Licensees upon public offering.  [*Id.* at ¶¶ 38-40, 53-54]  The Complaint alleges that Defendants made further misrepresentations regarding specific future capital markets transactions, including expressing plans and promises to "uplist" Decentral to a major stock exchange.  [*Id.* at ¶¶ 81-85]  These statements made by Defendants are more than just optimism or puffery about future performance; they use specific, numerical data about the companies' existing user bases and specific plans for the growth of the company. According to the Complaint, Plaintiff relied on these representations to assess the companies' current success and potential for future growth. [*Id.* at ¶¶ 29, 50, 61]  Thus, Defendants' statements about the companies' MAU counts and future plans and promises based on these metrics are factual representations that, if proven false, could form the basis for a fraud claim. Accordingly, Plaintiff has provided enough at this stage to meet the requirements of Rule 9(b) as it relates to the false representations.

### 6.    Conclusion

In sum, the allegations in the Complaint clearly identify the time, place, and contents of the false representations, the identity of the parties making the false representations, and the consequences thereof.  They thus are sufficient to satisfy the

heightened pleading requirements of Rule 9(b).  *Koch*, 203 F.3d at 1236.  The Court therefore respectfully **RECOMMENDS** that the Motion be **DENIED** to the extent it argues that Plaintiff's fraud claims fail to satisfy Rule 9(b)'s heightened pleading requirements.

### B.    Duplicative Claim

Defendants argue that Plaintiff's First and Second Claims of False Representation and Nondisclosure, respectfully, are different variations of the same fraud-based claim, making them duplicative.[13]  [#48 at 20-24]  Specifically, Defendants assert that Plaintiff's claims rely on the same alleged misstatements regarding MAU counts for the Licensees, and as such, Plaintiff's attempt to plead both fraud by affirmative misrepresentation and fraud by omission is improper.  [*Id*. at 23-24]  Plaintiff responds that the First and Second claims are not duplicative because they address distinct forms of fraud.  [#56 at 10-11]  Plaintiff contends that Colorado law permits the pleading of both claims simultaneously when they arise from different actions—namely, making false representations versus failing to disclose material facts.  [*Id.* at 11]  The Court agrees with Plaintiff.

As explained below, under Colorado law, a plaintiff may assert claims for both fraudulent misrepresentation and fraudulent concealment, provided that the claims are based on distinct actions or omissions by the defendant.  To state a claim for fraudulent misrepresentation, a plaintiff must plausibly allege: "(1) a fraudulent misrepresentation of material fact was made by [the defendant]; (2) the [plaintiff] relied on the misrepresentation[ ]; (3) the [plaintiff] ha[d] the right to rely on, or w[as] justified in relying

---

[13] In addition to arguing that Plaintiff's First and Second Claims are duplicative, Defendants also argue that these claims require Rule 9(b)'s heightened pleading requirements, which Plaintiff fails to meet.  [#48 at 21-22]  As discussed in the preceding section, the Court finds that Plaintiff has met the required pleading standard for his fraud-based claims, and thus only addresses the duplicative claim argument.

on, the misrepresentation; and (4) the reliance resulted in damages." *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994).  In contrast, a fraudulent concealment claim consists of the following five elements: (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.  *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 109 (Colo. 2011) (quotation omitted).  To allege fraud based on an omission, a plaintiff must identify "the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed." *Martinez v. Nash Finch Co.*, 886 F. Supp.2d 1212, 1216 (D. Colo. 2012) (quoting *S.E.C. v. Nacchio*, 438 F. Supp.2d 1266, 1277 (D. Colo. 2006)).

The key distinction between the two claims lies in the nature of the defendant's conduct.  Fraudulent misrepresentation is based on an affirmative act (making a false statement), whereas fraudulent concealment arises from the failure to act (failing to disclose a material fact).  *See In re Bloom*, 622 B.R. 366, 413 (Bankr. D. Colo. 2020) ("false representation involves an actual affirmative statement whereas fraudulent concealment is a tort of omission")  The Tenth Circuit has recognized that a single statement can give rise to both an actionable misrepresentation and an omission, noting that "[o]ne conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it

goes, since such concealment is in effect a false representation that what is disclosed is the whole truth." *Myklatun v. Flotek Indus.*, 734 F.3d 1230, 1234-35 (10th Cir. 2013). And Colorado courts have recognized that both claims may be brought together when the plaintiff alleges different conduct underlying each claim. *See*, *e.g.*, *Frontier Expl., Inc. v. Am. Nat'l Fire Ins. Co.*, 849 P.2d 887, 891-92 (Colo. App. 1992) (upholding verdict in favor of claims for both fraudulent representation and nondisclosure/concealment).

In this case, Plaintiff's claim for fraudulent misrepresentation is based on Defendants' affirmative statements in shareholder podcasts, where Defendants allegedly inflated the MAU counts for the Licensees to induce Plaintiff's investments. [#36 at ¶¶ 97-102] Plaintiff alleges that these statements were knowingly false and that he relied on them in purchasing securities in Decentral and MjLink. [*Id*.] This claim is rooted in *affirmative* misrepresentations—specifically, the false presentation of MAU data. In contrast, Plaintiff's claim for fraudulent concealment is based on Defendants' alleged failure to disclose the true MAU counts after having made the false statements, which misled Plaintiff into maintaining or increasing his investments. [*Id*. at ¶¶ 106-110]

Given the separate conduct alleged in each claim—affirmative misrepresentation versus failure to disclose—Plaintiff's First and Second claims are not duplicative under Colorado law and therefore the Court rejects Defendants' argument that the claims must be dismissed as duplicative. Plaintiff has adequately pleaded distinct factual bases for both claims, and Colorado law permits simultaneous pleading of fraudulent misrepresentation and fraudulent concealment when they arise from different actions by the defendant. Accordingly, this Court **RECOMMENDS** that the Motion be **DENIED** as to Claims **ONE and TWO** against Defendants.

C.    **Colorado Securities Act Claim**

Next, Defendants argue that Plaintiff's claim under the CSA should be dismissed because Plaintiff has failed to plausibly allege that Defendants were aware of the materiality of their alleged misrepresentations, as required under the CSA.  [#48 at 24] Defendants contend that Plaintiff's Complaint lacks sufficient allegations that show Defendants acted with the requisite scienter or knowledge of the misleading nature of their statements.  [*Id.*]  Plaintiff responds that the Complaint sufficiently pleads that Defendants knowingly made material misrepresentations about the Licensees' MAU counts with the intent to mislead investors.  [#56 at 16]  Plaintiff alleges that the MAU numbers were central to the business model of the Licensees, making their materiality obvious to Defendants, and that Defendants repeatedly promoted these numbers to encourage investment.   [#36 at ¶¶ 3, 23-32]   Plaintiff thus argues that these facts sufficiently establish that Defendants were aware of the materiality of their false statements and acted with the necessary intent under the CSA.  [#56 at 16-17]  The Court agrees with Plaintiff.

The CSA regulates the offer, sale, and purchase of securities in the state, requiring registration or an exemption for such transactions, and is designed to protect investors and maintain public confidence in securities markets.  Colo. Rev. Stat. § 11-51-101 *et seq*.  The Act includes anti-fraud provisions similar to federal laws, prohibits deceptive practices, and allows for civil and criminal penalties for violations.  *Id*.  To state a claim under the CSA, a plaintiff must allege that the defendant knowingly or recklessly made an untrue statement of material fact or omitted a material fact in connection with the sale or purchase of a security, and that the plaintiff relied on that misrepresentation to their

detriment.   C.R.S. § 11-51-501(1); *see also Agile Safety Variable Fund, L.P. v. RBS Citizens, N.A.*, 793 F. Supp. 2d 1248, 1258 (D. Colo. 2011).

Here, Plaintiff has alleged that the MAU counts for Decentral's Licensees were critical to the health and success of the companies, and therefore to the value of Decentral's stock.  [#36 at ¶¶ 3, 23-32]  This would make the MAU figures a material fact. Plaintiff further alleges that Defendants made false statements in multiple shareholder podcasts claiming that the Licensees had millions of users, when in fact they only had a few thousand.  [*Id.* at ¶¶ 55, 79]  Plaintiff's Complaint details how Defendants repeatedly misrepresented the Licensees' MAU counts over an extended period and continued to promote the idea that the companies were growing rapidly, inducing further investment. [#36 at ¶¶ 32, 36-41, 52-54, 56-57, 70, 72, 78-81]  The repetition of these misstatements, combined with the fact that they were key metrics for the Licensees' value, supports an inference that Defendants knowingly or recklessly made untrue statements that led investors to believe the companies were more successful than they actually were. Plaintiff's Complaint thus pleads sufficient facts to meet the scienter requirement under the CSA, which is sufficient to survive a motion to dismiss.  *In re Stat-Tech Sec. Litig.*, 905 F. Supp. 1416, 1427 (D. Colo. 1995) (concluding that scienter was sufficiently pled for Rule 12 purposes where the complaint alleged sufficient facts from which the defendant's awareness of wrongdoing could be inferred).   Accordingly, this Court **RECOMMENDS** that the Motion be **DENIED** as to Claim **THREE** against Defendants.

### D.    Negligent Misrepresentation Claim

Next, Defendants argue that Plaintiff's claim for negligent misrepresentation should be dismissed because the Plaintiff has failed to adequately allege the necessary

elements of such a claim, specifically that Plaintiff has failed to allege specific damages incurred due to the alleged misstatements.  [#48 at 25]  Plaintiff claims that he suffered significant financial losses as a result of his reliance on Defendants' misrepresentations, having invested over $1.7 million in companies that, according to the Complaint, were worth substantially less than their inflated metrics suggested.  [#56 at 17-18]  The Court agrees with Plaintiff.

To establish a claim for negligent misrepresentation, it must be shown that the defendant supplied false information to others in a business transaction and failed to exercise reasonable care or competence in obtaining or communicating information on which other parties justifiably relied.  *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A.*, 892 P.2d 230, 236 (Colo. 1995).  Negligent misrepresentation provides a remedy in cases involving money losses due to misrepresentation in a business transaction.  *W. Cities Broad., Inc. v. Schueller*, 849 P.2d 44, 49 (Colo. 1993).  Damages recoverable for negligent misrepresentation include: (1) the difference between the value of what the plaintiff received and its purchase price or other value given for it (out-of-pocket expenses); and (2) other pecuniary loss suffered as a consequence of the plaintiff's reliance upon the misrepresentation.  *Id*.  (citations omitted).

Here, Plaintiff claims his damages due to the alleged negligent misrepresentation are his $1.7 million collective investment in Defendants' companies.  [#56 at 18] According to Plaintiff, based upon Defendants' fraudulent misrepresentations, Plaintiff invested $1.7 million in stock for "worthless companies that had little to no genuine usership and thus little to no value," thereby satisfying the damages requirement of a negligent misrepresentation claim.  [#56 at 18]   And his Complaint supports these

assertions.   He specifically alleges that he invested $1,748,766.56 in Decentral and $5,000 in MjLink based upon Defendants' representations concerning the MAU's.   [#36 at ¶¶ 47-48, 60]  He further avers generally that he has been damaged [*id.* at ¶ 126] and specifically alleges that: (1) MAU's are a critical metric used to evaluate the health and success of social networking platforms [*id.* at ¶¶ 27-30], and (2) Defendants grossly misrepresented the MAU's for the Decentral licensees and MjLink [*id.* at ¶¶ 5, 38, 40-41, 65].  From these allegations, one can plausibly infer that Decentral and MjLink are worth significantly less than Defendants represented, and that Plaintiff's investment in these companies is worth significantly less than what he paid for that investment.  Thus, Plaintiff has plausibly pled damages recoverable for a negligent representation claim.  *W. Cities Broad.*, 849 P.2d at 49.  Accordingly, the Court finds that Plaintiff has plausibly pled a negligent misrepresentation claim against Defendants and **RECOMMENDS** that the Motion be **DENIED** as to Claim **FOUR** against Defendants.

### E.   Civil Conspiracy Claim

A civil conspiracy claim requires a plaintiff to show: "1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) an unlawful overt act; and 5) damages as the proximate result*." F.D.I.C. v. First Interstate Bank of Denver, N.A.*, 937 F. Supp. 1461, 1473 (D. Colo. 1996) (citing *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989)).  Defendants argue that Plaintiff has failed to plausibly allege the first and third elements of his civil conspiracy claim.  [#48 at 26-27]  With respect to third element, Defendants argue the Complaint merely recites the legal standard for conspiracy without providing factual support to demonstrate that Defendants had a meeting of the minds to pursue a common unlawful goal.  [*Id.* at 27]  With respect

to the first element, Defendants argue that individuals within a corporate structure cannot conspire with the corporations they represent.  [*Id*. at 26]  Plaintiff counters that the Complaint adequately pleads the elements of civil conspiracy by alleging that Defendants acted together to mislead investors about the Licensees' MAU counts.  [#56 at 18-20] Plaintiff argues that the Complaint details the interconnected relationship between Decentral and the Licensees and alleges that Defendants knowingly collaborated to present false MAU figures during shareholder podcasts.  [*Id*. at 19-20]  The Court analyzes these two elements below and ultimately concludes that Plaintiff has failed to plausibly allege a civil conspiracy claim.

### 1.    Agreement

To succeed on a civil conspiracy claim, Plaintiff must plausibly plead a meeting of the minds between Defendant and at least one other party.  *First Interstate Bank of Denver*, 937 F. Supp. at 1473.  "The court will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff."  *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995); *see also*, *e.g., Mecca v. United States*, 389 F. App'x 775, 780 (10th Cir. 2010) (affirming the dismissal of a conspiracy claim where the plaintiff failed to provide specific facts demonstrating an actual agreement between the parties).  The Complaint does not present any facts to prove that Defendants entered into an agreement to defraud investors.  Rather, Plaintiff asks the Court to infer an agreement "based [on] the nature of the podcasts."  [#56 at 18]  But, once again, the Court will not infer an agreement to establish a conspiracy.  Rather, Plaintiff "must allege *specific facts* showing agreement and concerted action among the defendants."  *McDaniel v. Denver Lending Grp., Inc.*, No. 08-cv-02617-PAB-KLM, 2009 WL 1873581, at *12 (D. Colo. June

30, 2009) (emphasis in original) (quotation omitted). The allegations posed in the Complaint are conclusory, merely suggesting parallel conduct without any factual basis for inferring a conspiracy.  [#36 at ¶¶ 128-134]  As such, the Complaint has failed to plausibly allege the necessary agreement to state a civil conspiracy claim.

### 2.    Civil Conspiracy Between a Corporation and Its Employees

Even if, arguendo, this Court found that a meeting of the minds did occur, the claim still fails.  Under the intracorporate conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy" because "[w]hen two agents of the same legal entity make an agreement in the course of their official duties, . . . as a practical and legal matter their acts are attributed to their principal" and thus "there has not been an agreement between two or more separate people."  *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017).  Colorado courts have recognized the doctrine and held that "[a] corporation and its employees do not constitute the 'two or more persons' required for a civil conspiracy, at least if the employees are acting on behalf of the corporation and not as individuals for their individual advantage."  *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1390 (Colo. App. 1986) (citations omitted); *see also Kerstien v. McGraw-Hill Cos.*, 7 F. App'x 868, 875 (10th Cir. 2001) (affirming summary judgment on Colorado civil conspiracy claim where plaintiff failed to establish that the individual employees acted for their individual advantage as opposed to acting on behalf of the company*); Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 51-52 (10th Cir.1963) (applying Colorado law and holding that a corporation and its employees cannot conspire to tortiously interfere with and bring about the breach of a distributorship agreement); *Titan Mfg. Sols., Inc. v. Nat'l Cost, Inc.*, No. 19-cv-1749-WJM-

SKC, 2020 WL 996880, at *3 (D. Colo. Mar. 2, 2020) (dismissing civil conspiracy claim where complaint failed to adequately allege that the employees were acting for individual advantage as opposed to acting on behalf of the company).

Here, Plaintiff alleges that Defendants publicized information reflective of their fraudulent scheme through podcasts and other communications. According to the Complaint, Defendant Ken Tapp is an executive and/or co-founder at Defendants Decentral, MjLink, LikeRe, and HuntPost. [#36 at ¶¶ 12, 14-15] Defendant Todd Markey is an executive at Defendants Decentral and MjLink. [*Id*. at ¶ 16] Because Defendants Tapp and Markey are agents of Decentral and its Licensees and were acting in their official capacities during the podcasts, an agreement cannot be established under the law.[14]

### 3.    Conclusion

Thus, the Court finds that Plaintiff has not plausibly pled a civil conspiracy claim against Defendants. Accordingly, this Court **RECOMMENDS** that the Motion be **GRANTED** as to Claim **FIVE** against Defendants.

---

[14] Decentral has an ownership interest in Defendants MjLink, HuntPost, and LikeRe [#36 at ¶ 14] and numerous courts have held that parents cannot conspire with subsidiaries and that two subsidiaries of the same parent cannot conspire with each other. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1233-34 (10th Cir. 2017) (collecting cases in the context of a Sherman Act claim). Plaintiff does not challenge this proposition, but instead argues that the Complaint does not allege that Decentral is the parent of MjLink, HuntPost and LikeRe. [#56 at 19] But even if Plaintiff is correct that this distinction (ownership interest vs. parent/subsidiary) would enable the corporate entities to conspire with each other, Plaintiff has failed to allege an agreement between these corporate interests. *See supra* Section III.E.1.

### F.      Colorado Consumer Protection Act Claim

The CCPA is designed to protect consumers from unfair or deceptive trade practices in the marketplace.  Colo. Rev. Stat. § 6-1-101 *et seq.*  "The CCPA was enacted to regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public."   *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003) (quotation omitted.  More specifically, the CCPA works to deter and punish businesses for consumer fraud.  *Id*.  In order to prove a private cause of action under the CCPA, a plaintiff must show:

> (1) the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered the injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Id.* at 146–47 (quoting *Hall v. Walter*, 969 P.2d 224, 235 (Colo.1998)).

Defendants argue that Plaintiff's CCPA claim should be dismissed.  [#48 at 28-31]  First, Defendants contend that the CCPA does not apply to securities transactions, and Plaintiff's claims, which are rooted in allegations of fraud related to the purchase of stock in Decentral, MjLink, and other entities, are inherently securities-based.   [#48 at 28]  Relatedly, Defendants assert that Plaintiff's claims under the CCPA are preempted by the CSA, which provides a comprehensive statutory framework governing fraud in connection with securities transactions.  [*Id.* at 28-29]  Finally, Defendants argue that Plaintiff has failed to plausibly assert a CCPA claim [*Id.* at 29-31]  Plaintiff counters that the CCPA is not preempted by the CSA in this case because there is no "manifest inconsistency" between the two statutes.  [#56 at 20-21]  Plaintiff further argues that the Defendants engaged in deceptive trade practices that affect the public interest and necessarily fall

31

within the governance of the CCPA.  [*Id*. at 21]  The Court addresses each of Defendants'
arguments and, based on these arguments, concludes that Plaintiff's CCPA claim should
be dismissed.

### 1.    The CCPA as Applied to Securities Transactions

Another court in this district has held that securities transactions do not fall under
the CCPA's definition of "consumer goods and services," and thus claims involving the
purchase or sale of securities are generally excluded from the scope of the CCPA.
*Robinson*, 2013 WL 754417, at *4 ("Where the 'goods' at issue are shares or other
securities investments, however, misrepresentations as to the nature or risk of the
investment are governed by the Colorado Securities Act.").  The *Robinson* Court noted
that the CSA provides specific causes of action against persons who make materially
misleading statements to investors or who cause misleading statements to be made in
any prospectus or other document filed with the securities commissioner.  *Id.* (citing Colo.
Rev. Stat. §§ 11-51-501, 502).  And "[w]here two statutory schemes attempt to regulate
the same conduct, the more specific statute preempts the general statute."  *Id.* (citing
*Showpiece Homes Corp. v. Assurance*, 38 P.3d 47 (Colo. 2001)).  The Court agrees with
this reasoning and agrees with Defendants that Plaintiff's CCPA claim, which is based on
allegations of fraud related to the purchase of securities in Decentral and MjLink, falls
outside the scope of the CCPA.  This alone warrants dismissal of Plaintiff's CCPA claim.

### 2.    Plausibility of Plaintiff's CCPA Claim

Even if the CCPA did apply to secured transactions and the CSA did not preempt
the CCPA, Plaintiff has still failed to plausibly allege a CCPA claim.  The Colorado
Supreme Court has held that the CCPA "can not be used to remedy a purely private

wrong." *Crowe v. Tull*, 126 P.3d 196, 208 (Colo. 2006).  Therefore, the CCPA requires a plaintiff to show that the defendant's unfair or deceptive practice significantly impacts the public as actual or potential consumers of the defendant's goods, services or property. *Rhino Linings*, 62 P.3d at 149.  To establish whether a challenged practice significantly impacts the public, a court should consider the following elements: (1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously affected other consumers or has the significant potential to do so in the future.  *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1122 (D. Colo. 2011).  In this case, Plaintiff's claims arise from his own investment in Decentral and MjLink.  [#36 at ¶¶ 36-37, 49, 81, 88]  Plaintiff has not provided evidence that anyone other than himself was affected by Defendants' alleged fraudulent misrepresentations, let alone that the misrepresentations significantly impacted the public as actual or potential consumers.

Plaintiff calls this assertion "laughable" because Decentral is a publicly traded company.  [#56 at]  But the Complaint primarily focuses upon representations made by Defendants on shareholder podcasts.  [#36 at ¶¶ 20 ("Defendants' primary deception involved knowingly making false public statements on shareholder podcasts.")]  And the Complaint fails to give any indication as to the number of people who listened to these podcasts or even the number of people who held shares in Decentral.  [*See id.* at ¶ 37 (stating that the purpose of one of the podcasts was to "update [Decentral] shareholders on the 2020 usership growth")]  Because the Complaint fails to give any indication as to the number of consumers impacted by the alleged false representations, the Court

concludes that Plaintiff has failed to plausibly plead a CCPA claim even if the CCPA applied to secured transactions.  See *Mayhew v. Cherry Creek Mortgage Co.*, No. 09–cv–00219, 2010 WL 935674, at *14 (D. Colo. March 10, 2010) (finding that all elements of a CCPA claim must be met; otherwise, the claim fails as a matter of law).

### 3.    Conclusion

Thus, the Court finds that Plaintiff has not plausibly pled a CCPA claim against Defendants.  Accordingly, this Court **RECOMMENDS** that the Motion be **GRANTED** as to Claim **SIX** against Defendants.

## IV.    CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint [#47] be **GRANTED** to the extent it seeks to dismiss the following claims: 1) Plaintiff's Fifth Claim of Civil Conspiracy against all Defendants and 2) Plaintiff's Sixth Claim of Violations of the Colorado Consumer Protection Act against all Defendants. The Court **RECOMMENDS** that the Motion is otherwise **DENIED**.[15]

---

[15] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's

DATED:  October 24, 2024                          BY THE COURT:

                                                  s/Scott T. Varholak
                                                  United States Magistrate Judge

---

recommendation *de novo* despite lack of an objection does not preclude application of
"firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc*., 52 F.3d
901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain
portions of magistrate judge's order by failing to object to those portions); *Ayala v. United
States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to
appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-
Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule
does not apply when the interests of justice require review).